HANNAH WATROUS *against* BENJAMIN WATROUS, and another.

*A.* and *B.*, being joint tenants of a grist-mill, dam, and the land on which *October,* 11.
they were erected, made, in 1788, a division in severalty, by a deed of par-
tition, *A.* taking one third, and *B.* two thirds. In 1791, *B.* erected a saw-
mill, on land, owned by him in severalty, and operated it by water taken
from the grist-mill pond, by means of a trough inserted in the dam. In
1797, *A.* and *B.* submitted to arbitrators, a controversy between them, re-
garding the overflowing of the land of *A.*, caused by the dam, erected for
the benefit of the grist-mill; whereupon it was awarded, that the dam
should remain as it then was, and if it should, in a common season, cause
the water to overflow *A's.* land, more than it did at the time of the parti-
tion, *B.* should pay damages. By a writing endorsed on this award, in
1799, *A.* and *B.* mutually agreed to abide by it. In 1807, *B.* by a quit-
claim deed, conveyed to *A.*, all *B's.* right and title in and to the grist-mill,
together with all implements and privileges, which *B.* owned, belong-
ing to such grist-mill. In an action subsequently brought by *A.* against *B.*,
for keeping up the dam, and thereby, overflowing the adjoining land of
*A.*, the defence set up, was, a right in *B.* to the use of the water, in the
manner stated in the declaration, for the purpose of operating his saw-mill.
It being found, that *B.* had acquired no such right, by a user of fifteen
years, it was held, that he had no such right, by virtue of the documents
referred to.

THIS was an action on the case, complaining of an injury,
in consequence of the defendants' raising and maintaining a
certain mill-dam above its ordinary height, and thereby cau-
sing the water to overflow a piece of adjoining grass-land,
belonging to the plaintiff, and in her possession.

The cause was tried in *Middlesex* county, *July* term, 1820,
before *Bristol*, J.

From the year 1780, to the year 1788, *Benjamin Watrous,*
one of the defendants, and *Gideon Watrous*, at that time hus-
band of the plaintiff, were joint-tenants of the dam, and an
adjoining grist-mill, the land on which they were erected, and
the grass-land mentioned in the declaration. In 1788, they
divided, by a deed of partition, the land and property con-
nected with it, between them; *Gideon* taking in severalty a
certain part of the land described in the deed, and one third
part of the grist-mill, and one third part of all the imple-
ments and privileges thereunto belonging, and also the use of
the mill six days in a year in addition to the one third part;
and *Benjamin* taking in severalty the remainder of the
land and buildings, and two thirds of the grist-mill, with

*Middlesex,*
October,
1820.

*Watrous*
*v.*
*Watrous.*

all the privileges and appurtenances thereunto belonging, except the use of the mill six days in a year. The grist-mill had been erected many years previous to this partition; and has, at all times, been operated by water, conducted in troughs, from the dam. After the partition, the parties owned and occupied it, according to the deed, until the year 1807. In 1791, *Benjamin* erected a saw-mill on land aparted to him, and, for the purpose of operating it, conducted the water to it from said dam, in a different part of the dam from that in which the trough conducting the water from it to the grist-mill, was inserted. This saw-mill remained until the year 1802; when a new one was erected on the same site, which has been continued until the present time. In 1797, *Gideon* and *Benjamin* submitted to arbitrators, a controversy between them, regarding the overflowing of the land of the former, caused by the dam, erected for the benefit of the grist-mill. The award decided, that the dam should remain as it then was; and if it should cause the water to overflow the land of *Gideon,* in a common season, so as to do more damage than it did at the time of the partition, *Benjamin* should pay him two thirds of the damage, according to the judgment of two indifferent men. On this award, the following agreement was subsequently endorsed: "*Saybrook,* *May* 9th, 1799. We, the subscribers, have agreed to abide the judgment of the within written instrument, with an alteration of a piece of land, near *Benjamin's* house; said *Benjamin* is to give *Gideon* twenty shillings, and never to have any more difficulty about any matter that is included in this paper, as witness our hands.

[Signed]    *Gideon Watrous,*
    *Benjamin Watrous.*"

On the 25th of *June,* 1807, *Benjamin,* by a quit-claim deed, conveyed to *Gideon,* all his right and title in and to the grist-mill, together with all implements and privileges, which he, the grantor, owned, belonging to the mill. *Gideon* died in 1814, leaving the plaintiff his widow; to whom the grass-land mentioned in the declaration was, shortly afterwards, set out, as part of her dower; and she has ever since been in the possession and enjoyment of it.

The defendants claimed, that *Benjamin* had constantly drawn the water from the dam, for the use of his saw-mill, in

the same manner, from the first erection of it in 1791, until the present time ; and that the dam, at the time of the grievance complained of in the declaration, was no higher than it was, at the first erection of the saw-mill, or at the partition in 1788. The defendants also claimed, that the writing endorsed on the award, and signed by *Gideon* and *Benjamin*, amounted to a grant, or, at any rate, to a licence, to *Benjamin*, to keep up the dam at the height it was, at the date of the award ; and that, by reason of the facts before stated, *Benjamin* and the other defendant, claiming under him, had good right to maintain and continue the dam at the height it was, at the time of the alleged grievance ; and they prayed the judge to instruct the jury accordingly.

The plaintiff insisted, that the defendants had no such right ; and if they ever had, it was relinquished by *Benjamin's* quit-claim deed to *Gideon* in 1807. The plaintiff, also, denied, that the dam had been continued, for any considerable period of time, of the same height, as at the time when the grievance complained of in the declaration, was committed ; and claimed, that it was never peaceably used by the defendants, or either of them, or any other person, for the purpose of operating the saw-mill, or for any other purpose, for the period of fifteen years ; but that her husband, during his life, had always prohibited such use, and had, from year to year, thrown down and demolished that part of the dam, which occasioned the grievance complained of.

The judge instructed the jury, that by the deeds and writings produced in evidence, *Benjamin Watrous* had no right, or authority, to overflow the land in question ; and if the jury should find, that the defendants had committed the injury complained of, and *Benjamin Watrous* had not acquired a right to do it, by a user of fifteen years, they would find for the plaintiff: But if he had not acquired such right, by user, or if the defendants had not done the injury complained of, they would find for the defendants.

A verdict was returned for the plaintiff ; and the defendants moved for a new trial, on the ground of a misdirection. The judge reserved the motion.

*Sherman*, in support of the motion.

*Staples* and *Hungerford*, contra.

*Middlesex,*
October,
1820.

Watrous
*v.*
Watrous.

Hosmer, Ch. J.    The jury, under the charge of the judge, undoubtedly must have found, that *Benjamin Watrous* had acquired no right, by occupancy, to overflow the plaintiff's land ; and that he did overflow it, to her damage.

In the examination of the subject presented by the motion, it is unnecessary to go further back, than the year 1807.    At this time, and ever since, *Gideon Watrous,* and after him, his widow, the plaintiff, owned the land overflowed with water, and the grist-mill, with its privileges and appurtenances.    It, however, is claimed, by the defendants, that *Benjamin Watrous* had a right to supply his saw-mill, from the pond, occasioned by the dam of the grist-mill, and for this purpose to erect and repair it ;  but for this proposition, it is difficult to discern a plausible pretence.    He has acquired no such right, by an exclusive and uninterrupted exercise of it for fifteen years ; nor by grant or licence.

The award of arbitrators, made in the year 1797, had no other effect, than to determine what sum of money *Benjamin* should pay *Gideon,* for the overflowing of his land, " caused by the dam erected for the benefit of the grist-mill."    When *Benjamin* relinquished his right to the grist-mill, by the deed of release, dated the 25th of *June,* 1807, the above-mentioned award could have no further operation.    It never had any reference to the saw-mill, or the right of drawing water for the use of it ; but if it had, the award merely ascertained what sum should be annually paid, without granting any property whatever.

I entirely concur with the judge at the circuit, " that by the deeds and writings, *Benjamin Watrous* had no right or authority to overflow the land in question."

The other Judges were of the same opinion.

New trial not to be granted.